

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 472 | **DATE** | 5/23/2002 |
| **CASE TITLE** | Schrader vs. Ferjack et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Pending motions to dismiss (Docs 10-1, 11-2, 13-1 and 18-1) are granted. Schrader's complaint is dismissed in its entirety. All other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 2 8 2002 | |
| | Notified counsel by telephone. | | date docketed | **28** |
| ✓ | Docketing to mail notices. | | lS | |
| ✓ | Mail AO 450 form. | U.S. District Court | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

STEVEN SCHRADER,

               Plaintiff,

vs.

WORTH POLICE OFFICER BRIAN FERJACK,
PALOS HEIGHTS OFFICER BARRY CHURIN,
PALOS HILLS OFFICER MERLOWSKI,
Badge No. 109, VILLGE OF WORTH, VILLAGE
OF ALSIP, VILLAGE OF PALOS HILLS,

               Defendants.

02 C 472

## MEMORANDUM OPINION

Before the court are motions to dismiss Plaintiff Steven Schrader's ("Schrader") complaint. The motions are brought by Defendant Officer Brian Ferjack ("Officer Ferjack"), the Village of Worth ("Worth"), the Village of Alsip ("Alsip"), Officer Robert Mankowski[1] ("Officer Mankowski"), the Village of Palos Hills ("Palos Hills"), Officer Barry Churin ("Officer Churin"). For the reasons set forth below, the motions are granted.

## BACKGROUND

The following facts are taken from Schrader's complaint and the court must accept them as true for the purposes of these motions. Schrader has owned and

---

[1] Officer Mankowski was improperly named as Palos Hills Officer Merlowski, Badge No. 109.

28

operated a business called "Godmudders" since 1993. Godmudders is currently located in Alsip, Illinois and has been at that location since May 1998. Godmudders modifies or customizes its customers trucks and vans into "show" vehicles. The modified trucks allegedly express the truck owner's artistic and creative vision of how he desires his truck to appear. Schrader alleges that, as the owner of Godmudders, he is extraordinarily knowledgeable in all state and federal laws that govern his business. He also states that he has another job as a federal inspector which requires him to ensure that police vehicles meet state and federal vehicle codes.

Schrader alleges that a few months after Godmudders moved to Alsip, Defendant Officers working for the various Defendant Villages pulled over both him and his customers while they were driving the trucks Godmudders had modified. The first such incident occurred in August 1998 when Officer Ferjack, who is an police officer employed with Worth, pulled Schrader over while Schrader was driving one of these custom vehicles. Officer Ferjack allegedly uttered certain profanities and was threatening, but he did not issue any tickets. Schrader subsequently called the Worth police department and complained about Officer Ferjack.

The alleged encounters between Schrader and Officer Ferjack also include the following. Schrader alleges that in January 1999, some months after his first encounter with Officer Ferjack, Officer Ferjack pulled him over while he was test driving one of his customer's vehicles. According to Schrader, Officer Ferjack insulted Schrader and issued Schrader tickets for no mudflaps and no proof of insurance. Schrader further

alleges that, in August 1999, Officer Ferjack again pulled him over while Schrader was driving one of his trucks. Schrader alleges that he explained to Officer Ferjack that his truck was not illegal, but that Officer Ferjack nonetheless wrote him three tickets for altered suspension, no splashguards or mudflaps, and unsafe bumpers. Officer Ferjack also, Schrader alleges, did a complete "investigation" of the truck, including taking pictures. On May 5, 2000, Officer Hamman pulled over Schrader. Officer Ferjack appeared and assumed authority over the situation. Officer Ferjack issued Schrader a ticket for mudflaps and Schrader had to go to the police station to make bond.

The incidents involving Schrader and officers other than Officer Ferjack include the following. Some months later, in June 1999, an Alsip police car followed Schrader, who was driving one of his customized trucks, into Schrader's parking lot. The unnamed officer driving the police car allegedly threatened Schrader that he would ticket all the trucks he customized until they were all off the road. Schrader alleges that he called the Alsip police department to complain about this incident and the police department representative he spoke to told him he ran an illegal business and that they would shut him down. That same month, Officer Churin of the Palos Heights police department stopped a Godmudders mechanic who was driving a customized vehicle and issued the mechanic a ticket. A dispute ensued between Officer Churin and Schrader, who was also in the car. Schrader subsequently filed a complaint with the Palos Heights police department.

The incidents involving various people Schrader is affiliated with are as follows. In July 1999, Officer Ferjack told Patty Schwartz ("Schwartz") that if he saw her husband's truck in Worth, he would ticket it and have it towed. Schwartz's husband's truck has been modified by Godmudders. In March 2000, Paul Jones ("Jones"), one of Schrader's customers, was stopped by Officer Mankowski of the Palos Hills police department while driving a vehicle modified by Godmudders. Officer Mankowski ticketed Jones for unlawful frame height, no splash guards, and unlawful bumper height. That same month, Officer Ferjack pulled over John Ambrose ("Ambrose"), another one of Schrader's customers, while Ambrose was driving a truck modified by Godmudders. Officer Ferjack made disparaging comments about Schrader and his business and told Ambrose that he did not want to see Ambrose in his truck again until the truck was "fixed." In May 2000, Officer Ferjack pulled over Mark Zemka ("Zemka"), yet another one of Schader's customers who was driving a customized truck. Officer Ferjack allegedly told Zemka that Schrader's business was illegal and issued Zemka two tickets for mudflaps and illegal bumper heights. In September 2000, Courtney Bass ("Bass"), again a customer of Schrader's, was similarly pulled over by Officer Ferjack while driving a truck Schrader had customized. Bass was issued two tickets for mudflaps and unlawful bumper heights. Officer Ferjack also allegedly told Bass that Schrader was engaged in an illegal business.

Schrader alleges that he went to court to defend his own tickets and to assist his customers in defending their tickets. He alleges that all tickets issued in the above

mentioned incidents were dismissed. He further alleges that one day in June 2000 when he went to court for one of the tickets he received, unnamed prosecutors told him he would be left alone if he signed a waiver from filing a civil suit. Schrader did not sign that waiver.

Schrader filed the instant lawsuit on January 16, 2002. Schrader's complaint contains seven Counts. The first four Counts are brought under the Civil Rights Act of 1871, 42 U.S.C. Section 1983 ("section 1983"). In Count I, Schrader sues the Defendant Officers in their individual capacity. He claims that the Defendant Officers retaliated against him for engaging in his business, which he asserts is a protected form of expression under the First Amendment. In Count II, Schrader sues the villages of Worth, Palos Heights, and Palos Hills, claiming they are liable for their officers' conduct. He sues Alsip in the same Count because it did not allow him to enter his customized trucks in the village parade. In Count III, Schrader sues Officer Ferjack for false arrest. In Count IV, he sues Officer Ferjack for vioation of his First Amendment right of access to the courts. The remaining Counts of Schrader's complaint contain state law claims. Count V is a claim of malicious prosecution against Officer Ferjack and Worth. Count VI is a claim of abuse of process against Officer Ferjack and Worth. Finally, Count VII is a claim of intentional intereference with prospective business advantage against all Defendants. The Defendants have moved to dismiss for various reasons.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Triad Assoc., Inc. v. Chicago Housing Auth., 892 F.2d 583, 586 (7th Cir. 1989). In ruling on a motion to dismiss, the court must first construe the complaint's allegations in the lightmost favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hartford Fire Ins. Co. v. California, 509 U.S. 764 (1993); Sherwin Manor Nursing Ctr., Inc. v. McAuliffe, 37 F.3d 1216, 1219 (7th Cir. 1994). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court is limited to the allegations contained in the pleadings themselves. Documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. Fed.R. Civ.P. 10(c). In addition, "documents that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central

to her claim." <u>Venture Assoc. Corp. v. Zenith Data Sys. Corp.</u>, 987 F.2d 429, 431 (7th Cir. 1993). With these principles in mind, the court turns to the instant motion.

## DISCUSSION

The court begins with certain of the Defendants' argument that Schrader's allegations concerning incidents that allegedly occurred two years prior to the instant complaint must be stricken because they are outside the two year statute of limitations applicable to section 1983 suits. <u>Heard v. Sheahan</u>, 253 F.3d 316, 317 (7th Cir. 2001). Officer Ferjack and the Village of Worth argue that any incident involving Officer Ferjack that occurred prior to January 18, 2000 must be stricken. Alsip argues that the June 1999 incident involving one of its Officers should be stricken. Finally, Officer Churin argues that the one allegation pertaining to him – the June 1999 traffic stop – is also barred.

Schrader argues that these allegations should not be stricken because the continuing violation doctrine applies. The doctrine of continuing violation is a doctrine of accrual. <u>Heard</u>, 253 F.3d at 319. "A violation is called 'continuing'...when it would be unreasonable to require or even permit [the plaintiff] to sue separately over every incident of the defendant's unlawful conduct." <u>Id.</u> Claims under section 1983 accrue when the "plaintiff knows or should know that his constitutional rights have been violated." <u>Wilson v. Giesen</u>, 956 F.2d 834, 836 n. 1 (7th Cir. 1992). Applying these principles to the instant case, we find that Schrader cannot invoke the continuing violation doctrine. Each incident alleged in Schrader's complaint allegedly involves a

separate claimed violation of Schrader's First Amendment rights. Additionally, Schrader alleges that as the owner of Godmudders and as a federal inspector of police vehicles, he is knowledgeable about federal and state vehicle codes and believed his modified trucks were compliant with those codes. Furthermore, Schrader alleges that he called the Worth police department to complain about his first incident with Officer Ferjack in August 1998. This indicates Schrader knew that Officer Ferjack's conduct was offensive. His attempts to now argue that he did not know the stops were injurious until May 2000 when his first ticket was dismissed are unavailing. As such, all allegations relating to incidents that occurred prior to January 18, 2000 are stricken. Officer Churin is accordingly dismissed from this case. Schrader cannot sue Alsip for the conduct of its unnamed officer in June 1999 and cannot sue Officer Ferjack and Worth under section 1983 for incidents that occurred prior to that time.

Having decided that certain of Schrader's allegations are barred by the applicable statute of limitations, the court now addresses the merits of his section 1983 claim based on the allegations that fall within the two year period prior to the filing of his complaint. To make out a claim under section 1983, Schrader must adequately allege two essential elements. First, he must show that Defendants engaged in conduct depriving him of rights, privileges, or immunities secured by the United States Constitution or federal law. 42 U.S.C. § 1983. Second, Schrader must show that this conduct occurred under

color of state law. Id. The second element is not disputed here, so the court turns to determine whether Schrader has alleged a deprivation of a constitutional right.[2]

In Counts I and II, Schrader claims that his First Amendment right to free speech was violated. Count I is brought against the Defendant Officers in their individual capacities, and Count II is brought against the Defendant Villages. All Defendants argue that Schrader has not shown that his First Amendment right to free speech is implicated in this case. The allegations Schrader makes to link the Officers and the villages' actions to the First Amendment are as follows. First, he alleges that he is in the business of customizing trucks and other vehicles to "express the [vehicle] owner's artistic and creative vision of how he desires his truck to appear." Compl. ¶ 10. Schrader also claims he is engaged in the protected conduct of "manufacturing customized 'show' vehicles personalized to his clients' desires." Compl. ¶¶ 20-21.

Schrader argues that the trucks he customizes for his customers constitute protected activity because the trucks are "show" vehicles. He then tries to analogize them to sculptures and nude dancing. His argument appears to be that if nude dancing is protected activity under the First Amendment, then surely manufacturing and driving these "monster" trucks on local and interstate highways must also be. This is not enough. Schrader has not shown that driving his "monster" trucks on public roads is

---

[2] We note that certain of the Defendants interpret Schrader's complaint as alleging constitutional violations on behalf of third parties, i.e., his customers. After reviewing the complaint along with Schrader's response, the court finds that Schrader has included these allegations to support Schrader's claim of intentional intereference with prospective business advantage and related damages.

protected activity. We recognize that he is not required to produce a case exactly on point, but Schrader cites no cases that are factually analogous to his case. Nor has this court's independent review uncovered any such cases. See e.g., S.E.C. v. Barzilay, No. 99 C 5023, 2001 WL 127667, at *2 (N.D. Ill. Feb. 14, 2001) (stating it is not the court's obligation to research and construct the parties' arguments). Without any support to do so, and based solely on Schrader's allegations and unpersuasive argument in his opposition papers, this court declines to extend First Amendment protection to the facts of this case; we will not hold that Schrader has a First Amendment right to drive a "monster truck" on public highways. Because Schrader has not alleged a constitutionally protected activity as the basis for Counts I and II, those claims are dismissed. Eversole v. Steele, 59 F.3d 710, 717 (7th Cir. 1995).

Count III is brought solely against Officer Ferjack and is a claim for false arrest brought under the Fourth Amendment.[3] Schrader alleges that Officer Ferjack's detention of him and his arrest on May 5, 2000 was without "legal cause, and was based upon information known by defendant to be untrue and was unreasonable." Compl. ¶ 31. Here, by Schrader's own allegations, Officer Ferjack pulled him over and arrested him because he believed that Schrader's modified truck violated the Illinois Vehicle Code. The fact that the tickets Officer Ferjack issued to Schrader were allegedly

---

[3] We note that Schrader does not identify in his complaint whether he sues Officer Ferjack in Count III in his individual or official capacity. Based on the relief Schrader seeks, however, we conclude he is suing Officer Ferjack in his individual capacity. See Miller v. Smith, 220 F.3d 491, 494 (7th Cir. 2000).

- 10 -

ultimately dismissed or that Schrader's truck was in fact in compliance with the Illinois Vehicle Code are of no moment. Under the Fourth Amendment analysis, an officer's reasonable mistake will be excused. Sheik-Abdi v. Martin E. McClellan, 37 F.3d 1240, 1245 (7th Cir. 1994).

Schrader seems to allege that Officer Ferjack should have known that the truck he was driving complied with the Illinois Vehicle Code simply because Schrader told him so or because Schrader told him a judge had dismissed tickets Schrader previously received because of his truck(s). Officer Ferjack was not obligated to let Schrader go based on what Schrader told him without more. By Schrader's logic, an officer cannot arrest an individual he believes is engaged in illegal activity if that individual states or explains to the officer that the individual is really not violating any laws. Such a result would be nonsensical. Additionally, if we interpret Schrader's complaint to be alleging that Officer Ferjack knowingly pulled him over on May 5, 2000 because he wanted to punish Schrader for engaging in protected activity his claim still fails because, as discussed above, Schrader has not shown that he was engaged in protected activity. Accordingly, we find that Schrader has not sufficiently alleged false arrest under the Fourth Amendment and Count III is dismissed.

Count IV similarly fails to state a claim under section 1983 because it does not allege the deprivation of a constitutional right. Schrader brings this Count solely against Ferjack and claims Ferjack violated his First Amendment right of access to the courts. Yet his allegations do not provide a factual or legal basis for such a claim. See

e.g., Love v. Bolinger, 927 F. Supp. 1131 (S.D. Ind. 1996). Schrader's allegations do not indicate that he was deprived of meaningful access to the courts in any way. Rather, his allegations indicate he was in court more than he would perhaps like and that, while there, he always succeeded in representing himself and others. Accordingly, Count IV must also be dismissed.

Because the court finds that Schrader has not alleged a cognizable violation of constitutional rights, Schrader's claims under section 1983 fail. See e.g., Eversole, 59 F.3d at 717.

The court notes that, even if we had found Schrader had alleged a constitutional deprivation, the Counts brought against the individual Defendants would still be dismissed because the Defendants are entitled to qualified immunity under the circumstances of this case. Perry v. Village of Arlington Heights, 1997 WL 433694, at *1 (N.D. Ill. 1997). Under the doctrine of qualified immunity, public officials performing discretionary functions are protected against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Auriemma v. Rice, 910 F.2d 1449, 1452 (7th Cir. 1990). A qualified immunity analysis entails a purely objective inquiry to determine whether at the time of the alleged illegal act, the right asserted by the plaintiff was clearly established in the particular factual context presented. The plaintiff has the burden of demonstrating the violation of a clearly established right. Perry v. Village of Arlington Heights, 1997 WL 433694, at *1 (N.D. Ill. 1997).

In this case, the question is whether a reasonable officer would have known that he would be violating an individual's First or Fourth Amendment rights by pulling the individual over while the individual was driving a "monster truck." As discussed above, Schrader provides the court with no analogous cases, much less one that is on point. We remain unpersuaded that a reasonable officer would think that pulling over and arresting an individual who was driving a "monster truck" that arguably if not definitely appeared to violate state traffic laws would be violating the United States Constitution. Thus, we find that the Defendant Officers would, in any event, be entitled to qualified immunity.

We also note that, although we dismissed Count II because Schrader fails to allege a constitutional deprivation, the allegations in this Count fail to allege a basis for holding the Defendant Villages liable for the officers' conduct. A municipal government entity is liable for the acts of its officers or employees under section 1983 only if an official municipal policy or custom resulted in the alleged violation. Monell v. Dept. of Social Services, 436 U.S. 658, 693 (1978). There are three ways that a municipality may be shown to have violated an individual's constitutional rights because of its policy or custom: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority." McTigue v. City

of Chicago, 60 F.3d 381 (7th Cir. 1995). This court finds that Schrader has failed to allege any of these.

We recognize, as Schrader points out, that plaintiffs suing under section 1983 are not held to heightened pleading requirements, Leatherman v. Tarrant Cnty, 507 U.S. 163 (1993), but boilerplate allegations such as Schrader's will not do either. Sivard v. Pulaski Cnty., 17 F.3d 185, 188 (7th Cir. 1994) (stating "boilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient"). Schrader's allegations do not support an express policy or a widespread practice. For each Defendant Village, Schrader has alleged that no more than one officer engaged in offensive conduct; and for most he only alleges a single incident. Johnson v. Sandidge, 87 F. Supp. 2d 832, 834 (N.D. Ill. 1999); Askew v. Fairman, 880 F. Supp. 557, 563 (N.D. Ill. 1995). Municipal liability will not lie on the basis of one individual's conduct unless that individual is a final policymaker. Baxter v. Vigo Cnty Schl. Corp., 26 F.3d 728, 735 (7th Cir. 1994). The Defendant Officers are not final policymakers for any of the Defendant Villages, and Schrader has not alleged as much. With respect to Alsip, the one act that Schrader appears to pin on an individual policymaker is Alsip's refusal to allow him to participate in a parade. This allegation is too vague to make it past a motion to dismiss. Schrader fails to allege when this occurred or who – either by name or title – refused to allow him to enter his trucks in the parade. Accordingly, we find that, even if Schrader had alleged a violation

of his constitutional rights, his allegations do not provide a basis for holding the Defendant Villages liable.

Because Schrader's federal claims have been dismissed, this court no longer has supplemental jurisdiction over his state law claims and does not address Defendants' arguments challenging the sufficiency of those claims.

## CONCLUSION

Schrader's complaint is dismissed in its entirety.

_____
Charles P. Kocoras
United States District Judge

Dated: __May 23, 2002__